**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Christina N. Mirzaie (SBN 333274)
cmirzaie@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL OLMOS, MICHAEL TRAMEL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>T. MARZETTI COMPANY,<br><br>        Defendant. | Case No. 2:21-CV-3159-JAK-MRW<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE SECTION 1750, *et seq.*<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq.*<br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE SECTION 17500, *et seq.*<br>4. BREACH OF EXPRESS WARRANTY<br>5. UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

CLARKSON LAW FIRM, P.C.<br>9255 Sunset Blvd., Suite 804<br>Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Plaintiff Rachel Olmos and Plaintiff Michael Tramel ("Plaintiffs"), each individually and each on behalf of all others similarly situated, bring this class action complaint against T. Marzetti Company ("Defendant" and/or "Marzetti") and allege as follows:

## INTRODUCTION

1. Marzetti is a billion-dollar company[1] that falsely labels and advertises its New York Bakery toast products, including, but not limited to, Ultimate Garlic Texas Toast, Texas Toast with Real Garlic, Five Cheese Texas Toast, and Parmesan Texas Toast (the "Product(s)") as having "No Preservatives," when in reality, they contain an FDA-classified preservative, citric acid. *See* Figures 1- 4, *infra*.

2. Marzetti's unlawful and unfair business practice of falsely labeling and advertising its Products deceives consumers and stifles competition. *See* Figure 5, *infra*.

***Figure 1.***



---

[1] *See* Lancaster Colony Corporation 2020 Annual Report, http://www.lancastercolony.com/investors/sec-filings-and-annual-reports/annual-reports/default.aspx (last visited June 2, 2021).

2

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## Ingredients

Bread,: Enriched Wheat Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Wheat Gluten, Contains 2% or Less of: Dehydrated Garlic, Salt, Yeast, Natural Flavors (Contains Milk), Soybean Oil, Sugar, Spice, Ascorbic Acid (Dough Conditioner), Cornmeal.

Spread,: Soybean Oil, Water, Garlic, Salt, Dehydrated Garlic, Garlic Juice, Hydrogenated Cottonseed Oil, Sugar, Natural Flavor, Mono and Diglycerides, Citric Acid, Spice, Yeast Extract, Whey (a Milk Ingredient), Beta Carotene Added for Color.

*Figure 2.*



FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Ingredients

**CONTAINS: WHEAT, MILK.**

Bread: Enriched Wheat Flour (Wheat Flour, Malted Barley Flour, Niacin, Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, contains 2% or less of: Yeast, Salt, Soybean Oil, Dextrose, Dough Conditioners (Datem, Mono- and Diglycerides, Calcium Sulfate, Ascorbic Acid, Enzymes), Cornmeal.

Spread: Soybean Oil, Water, Palm Oil, Parmesan Cheese (Part Skim Milk, Cheese Cultures, Salt, Enzymes), Garlic*, Salt, Mono- and Diglycerides, Parsley*, Natural and Artificial Flavors, Citric Acid, Whey (a Milk ingredient), Autolyzed Yeast Extract, Beat Carotene added for Color. Cheese Blend: Parmesan Cheese (Milk, Cheese Culture, Salt, Enzymes), Provolone and Mozzarella Cheese (Part Skim Milk, Cheese Culture, Salt, Enzymes). *Dehydrated.

*Figure 3.*



FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

# Ingredients

**CONTAINS WHEAT, MILK.**

BREAD: ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, REDUCED IRON, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, CONTAINS 2% OR LESS OF: SALT, YEAST, SOYBEAN OIL, DEXTROSE, ASCORBIC ACID ( VITAMIN C), CORNMEAL. SPREAD: SOYBEAN OIL, WATER, PALM AND/OR HYDROGENATED COTTONSEED OIL, SALT, GARLIC*, MONO AND DIGLYCERIDES, NATURAL FLAVOR, PARSLEY*, CITRIC ACID, YEAST EXTRACT, WHEY (A MILK INGREDIENT), BETA CAROTENE ADDED FOR COLOR. *DRIED

*Figure 4.*



FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

# Ingredients

**CONTAINS MILK, WHEAT.**

BREAD: ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY
FLOUR, REDUCED IRON, NIACIN, THIAMINE MONONITRATE,
RIBOFLAVIN, FOLIC ACID), WATER, CONTAINS 2% OR LESS OF: SALT,
YEAST, SOYBEAN OIL, DEXTROSE, ASCORBIC ACID (VITAMIN C),
CORNMEAL. SPREAD: SOYBEAN OIL, WATER, SALT, PALM AND/OR
HYDROGENATED COTTONSEED OIL, CONTAINS 2% OR LESS OF:
GARLIC*, PARMESAN CHEESE (MILK, CHEESE CULTURES, SALT,
ENZYMES), MONO AND DIGLYCERIDES, NATURAL FLAVOR, PARSLEY*,
CITRIC ACID, YEAST EXTRACT, WHEY, AUTOLYZED YEAST EXTRACT,
LACTIC ACID, XANTHAN GUM, BETA CAROTENE ADDED FOR COLOR.
CHEESE: ASIAGO, MOZZARELLA, CHEDDAR, PARMESAN, AND
PROVOLONE CHEESES (MILK AND/OR SKIM MILK, CHEESE CULTURES,
SALT, ENZYMES, ANNATTO COLOR). *DRIED

16

***Figure 5.***

17
18
19
20
21
22
23
24
25
26
27
28



FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069



1
2
...
24
25  //
26  //
27  //
28  //

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

3.    The average consumer spends only 13 seconds to make an in-store purchasing decision.[2] That decision is heavily based upon the product's front labeling. Based on its front label, reasonable consumers believe that the Products are free of preservatives.

4.    Marzetti's profits are attributable, in part, to deceptive labeling and advertising of the Products as containing "No Preservatives." In reality, the Products contain a well-known preservative, citric acid.

5.    Consumers rely on Defendant's labeling and advertising of the Products as containing "No Preservatives" to be truthful and would not know that the Products actually contain a preservative.

6.    Reasonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of "No Preservatives."

7.    Defendant knows that consumers are willing to pay more for foods that are labeled as containing "No Preservatives" because they perceive it to be a healthier alternative to similar products without the no preservatives label, and advertises the Products with the intention that consumers rely on the representation made on the front of the Products' packaging that the Products have "No Preservatives."

8.    By falsely labeling the Products as having "No Preservatives," Defendant has profited from consumers' preference for food products that are perceived to be healthier or made free of preservatives.

9.    Defendant's false and misleading labeling and advertising of the Products violates the California Consumers Legal Remedies Act, particularly California Civil Code Section 1750, *et seq.* As such, Defendant has committed *per se* violations of Business and Professions Code Section 17200, *et seq.*, Business and

---

[2] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

FIRST AMENDED COMPLAINT

Professions Code Section 17500. Defendant is also in breach of express warranty and has been unjustly enriched.

## The Products Contain the Preservative Citric Acid

10. Defendant advertises and displays on the front of the Products that they contain "No Preservatives," thereby misleading reasonable consumers to believe that the Products are free of preservatives. However, the Products contain a well-known and well-documented chemical preservative, citric acid.

11. The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

12. The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in frozen foods like the Products. [3] Specifically, the FDA elaborates under its "What They Do" section, that preservatives, among other things, help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness." *Id.*

13. In the same section, immediately *infra,* the FDA also provides "[e]xamples of uses" for preservatives, like citric acid, such as in "oils and margarines." *Id.* The citric acid found in the Products is contained in the margarine type spread found on the frozen bread.

---

[3] *See* FDA website, https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm (last visited June 2, 2021).

9

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

14.     Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[4]

15.     Citric acid's ability to chelate, or form compounds containing a ligand bonded to a central metal atom at two or more points, with other chemical compounds allows citric acid to stabilize active ingredients.[5] Citric acid stabilizes active ingredients. Citric acid stabilizes the active ingredients[6] in the Products and thus acts as a preservative.

16.     In addition, citric acid has been found to have antimicrobial properties against some bacterial and mold.[7]

17.     Citric acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added citric acid to the Products, including, as a flavoring agent. As the FDA states, a preservative like citric acid "when added to food, *tends to prevent or retard deterioration thereof* […]." (Emphasis added).

---

[4] *See* FDA label compliance website,
https://www.fdalabelcompliance.com/letters/ucm228663 (last visited June 2, 2021).
[5] National Center for Biotechnology Information. PubChem Database. Citric acid, CID=311, https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (last visited June 2, 2021).
[6] *Citric Acid,* https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (last visited on June 2, 2021).
[7] Branon, et al. 2002 *Food Additives*, 2nd edition, pages 591. Marcel Dekker, NY NY.

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

18.   Even if citric acid can be used as a flavoring agent in the Products, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Products because citric acid acts as a preservative *even if* very low levels are contained in the Products.[8]

19.   The quantity of citric acid therefore needed to affect the flavor of the Products is more than sufficient to function as a preservative.

20.   Citric acid in frozen foods, like in the Products, functions as a preservative through its chelating and acidic properties that enhance the action of antioxidants and inactivate naturally present enzymes which could cause undesirable browning and loss of flavor.[9]  Citric acid serves these functions regardless of whether it is also being used as a flavorant.[10]

21.   Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life. To help ensure this, manufacturers impose many hurdles to degradation when formulating a product. Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Products for other reasons.[11]

---

[8] *See* Doores, S., 1993. Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods.* Marcel Dekker, Inc., New York, pp. 95-136. http://base.dnsgb.com.ua/files/book/ Agriculture/Foods/Antimicrobials-in-Food.pdf (last visited June 2, 2021).

[9] *Kirk-Othmer Food and Feed Technology*, Volume 1, p. 262 (John Wiley and Sons, 2007); Barrett, et al. *"Direct Food Additives in Fruit Processing,"* in *Processing Fruits: Science and Technology*, Second Edition, Diane M. Barrett, Laszlo Somogyi, and Hosahalli S. Ramaswamy, eds., p. 302 (CRC Press, 2004); Abhd-Elhady, "Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry," *Annals of Agricultural Sciences*, 59:69-75 (2014).

[10] *See* Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.

[11] *See* Biesta-Peters, E., et al. Comparing Nonsynergistic Gamma Models with Interaction Models To Predict Growth Of Emetic Bacillus Cereus When Using

---

11
FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

22.    Citric acid, is not only a preservative, but also imparts artificial flavor. While citric acid is naturally found in fruits and vegetables, the citric acid found in processed foods, like the Products, is artificial or manufactured citric acid ("MCA") that has gone through extensive chemical processing.[12]

23.    MCA is created through *Aspergillus niger* fermentation. *Aspergillus niger* is a common black mold that grows on decomposing starchy fruits and vegetables. It is chemically processed by being fed sugars, such as glucose and sucrose, which then creates a citric acid solution, that is then filtered and processed for use in final form. As it grows, *Aspergillus niger* excretes large amounts of citric acid,[13] thereby making it an industry favorite among food and beverage manufacturers.  In fact, *Aspergillus niger* remains the world's primary method for creating MCA.[14]

24.    MCA—through the *Aspergillus niger* process—is used extensively in the food, beverage, chemical, and pharmaceutical industries[15] due to its ease of handling, ability to ferment a variety of cheap, raw materials, and high citric acid yield.[16]

---

Combinations Of Ph And Individual Undissociated Acids As Growth-Limiting Factors. *Applied and Environmental Microbiology,* American Society for Microbiology, (2010).

[12] Iliana E. Sweis and Bryan C. Cressey, Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports National Center for Biotechnology Information, U.S. National Library of Medicine National Institutes of Health (August 9, 2018) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ (last visited June 2, 2021).

[13] Maria Papagianni, Advances in citric acid fermentation by *Aspergillus niger:* Biochemical aspects, membrane transport and modeling, *Biotechnology Advances,* 25:244-263 (2007).

[14] Tushar Patel and Hiral Pandya, Citric Acid Production Fermentation Process, *International Journal of Advance Research and Innovative Ideas in Education* 3 (2017): 3983-3991.

[15]Jianlong Wang, Enhancement of citric acid production by Aspergillus niger using n-dodecane as an oxygen-vector, *Process Biochemistry*, 35 (10), 1079-1083. (2000).

[16] Citric Acid Production, *supra.*

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Consumers Seek Preservative-Free Foods**

25.   By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health…84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[17]

26.   One study found that when consumers were asked to choose a product that was the closest to their understanding of what "natural" is based on product labels, consumers chose "No Preservatives" amongst other labels. [18]

27.   Consumers are also willing to pay more for products with "no preservatives" labels because of the perceived higher quality, health and safety benefits associated with such foods. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods.[19] This, coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor,

---

[17] *See, Free-From Food Trends - US - May 2015,* Mintel: World's Leading Market Intelligence Agency http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited June 2, 2021).

[18] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[19] *See, We Are What We Eat: Healthy Eating Trends Around the World,* Nielson (Jan. 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/january-2015-global-health-and-wellness-report.pdf (last visited June 2, 2021).

FIRST AMENDED COMPLAINT

means consumers are eager and willing to pay more for food advertised and labeled as having "No Preservatives" like the Products.[20]

28.    Defendant's practice of capitalizing on consumers' preferences for healthier products is deceptive. This deception continues today, as consumers continue to purchase the Products under the mistaken belief that it is preservative-free based on Defendant's false, deceptive, and misleading labeling and advertising of the Products as having "No Preservatives."

29.    Plaintiffs and other consumers of the Products made their purchase decisions in reliance upon Defendant's advertised claims that that Products contain "No Preservatives."

30.    Plaintiff Olmos purchased Ultimate Garlic Texas Toast from a Vons store in Palmdale, California in January 2021.  Plaintiff Olmos paid approximately $4.00 for the Product. The Product was labeled as having no "No Preservatives" on the front of the Product packaging but contained citric acid, a well-known preservative.

31.    Plaintiff Tramel purchased Five Cheese Texas Toast from a Dollar Store in Bakersfield, California in December 2020.  Plaintiff Tramel paid approximately $1.00 for the Product. The Product was labeled as having no "No Preservatives" on the front of the Product packaging but contained citric acid, a well-known preservative.

32.    Plaintiffs and the Class reasonably and detrimentally relied upon the "No Preservatives" Products' label. Plaintiffs and the Class would not have purchased the Products had they known that the Products contain preservatives.

33.    The Products are all manufactured by Defendant.

---

[20] *See, Health and Wellness the Trillion Dollar Industry in 2017: Key Research Highlights*, Euromonitor International, https://blog.euromonitor.com/health-and-wellness-the-trillion-dollar-industry-in-2017-key-research-highlights/ (last visited June 2, 2021).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

34. The Products are all sold at grocery and retail stores throughout California and the United States.

35. The Products are all manufactured in the same facilities.

36. The Products all contain similar bread slices (i.e., thick, Texas toast) with flavored spread.

37. The Products are all packed in opaque, 11.25 oz., rectangular cardboard boxes.

38. The Products are all labeled and advertised as containing "No Preservatives."

39. The Products all include the preservative, citric acid.

40. Consumers of the Products have been deceived in the same way.

41. Consumers of the Products have been injured in the same way.

42. Consumers of the Products have been damaged in the same way.

43. Defendant's conduct threatens California consumers by using intentionally deceptive and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

44. There is no practical reason for false labeling and advertising of the Products, other than to mislead consumers as to the presence of preservatives in the Products while simultaneously providing Defendant with a financial windfall.

45. Plaintiffs makes the allegations herein upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### Similar Frozen Food Products that Do Not Contain Preservatives are Accurately Labeled by Competitors

46. Frozen foods products that do not contain preservatives, namely citric acid, are accurately labeled as containing "No Preservatives" in the marketplace. For

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

example, Pepperidge Farm's Texas Toast Made with Real Garlic & Parsley is accurately labeled as having "No Preservatives," and does not contain citric acid in its ingredient list. Similarly, Green Giant's Riced Veggies, Simply Steam Riced Cauliflower Casserole is labeled as having "No Preservatives" on the front label, and does not include citric acid in its ingredient list. True and correct representations of the comparator products are set forth below. See, Figure 6, *infra*.

**_Figure 6._**



//
//
//
//
//
//
//
//
//

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069





FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069



## **Frozen Food Products that Contain Preservatives are Accurately Labeled by Competitors**

47.   Frozen food products that contain preservatives, such as citric acid, do not label their products as having "No Preservatives" when they do in fact contain preservatives. For example, Walmart's Great Value Garlic Texas Toast contains citric acid and is not labeled as having "No Preservatives." Another example is Target's Market Pantry's Garlic Texas Toast that contains citric acid, but is also not labeled as having "No Preservatives."   True and correct representations of the comparator products are set forth below.  See, Figure 7, *infra.*

//

//

//

//

//

//

//

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

18

FIRST AMENDED COMPLAINT

*Figure 7.*



//
//
//

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**PARTIES**

48.    Plaintiff Rachel Olmos is, and at all times relevant hereto was, a citizen of California. Plaintiff Olmos purchased Ultimate Garlic Texas Toast from a Vons store in Palmdale, California in January 2021 for approximately $4.00. In making her purchase, Plaintiff Olmos relied upon the claims made on the front label of the Product, including the "No Preservatives" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Olmos had known that the Product actually contained preservatives, she would not have purchased the Product. Plaintiff Olmos may want to purchase the Product again if she can be sure that Defendant is compliant with federal and state consumer protection laws.

49.    Plaintiff Michael Tramel is, and at all times relevant hereto was, a citizen of California. Plaintiff Tramel purchased Five Cheese Texas Toast from a Dollar Store in Bakersfield, California in December 2020 for approximately $1.00. In making his purchase, Plaintiff Tramel relied upon the claims made on the front label of the Product, including the "No Preservatives" claims, which were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff Tramel had known that the Product actually contained preservatives, he would not have purchased the Product. Plaintiff Tramel may want to purchase the Product again if he can be sure that Defendant is compliant with federal and state consumer protection laws.

50.    T. Marzetti Company is a corporation headquartered in Westerville, Ohio and maintains its principal business office at 380 Polaris Parkway, Suite 400, Westerville, OH 43082. Marzetti directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Marzetti is the one of the owners, manufacturers, and distributors of

20

FIRST AMENDED COMPLAINT

the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive packaging for the Products.

## **JURISDICTION AND VENUE**

51.   This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

52.   Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Plaintiffs are citizens of California who reside in this District; Defendant made the challenged false representations to Plaintiffs in this District; Plaintiffs purchased the Products in this District; and Plaintiffs used the Products within this District. Moreover, Defendant receives substantial compensation from sales in this District.

53.   Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## **CLASS ALLEGATIONS**

54.   Plaintiffs bring this action each on their own behalf and each on behalf of all other persons similarly situated. The Class which Plaintiffs seeks to represent comprises:

> All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

55.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

b.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

c.    Whether Defendant represented the Products have characteristics or quantities that it does not have in violation of Civil Code section 1750, *et seq.*;

d.    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

e.    Whether Defendant's labeling and advertising of the Products is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

f.    Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

g.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

h.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.

j.    Whether Defendant is liable for common law fraud;

k.    Whether Defendant breached an expressed warranty regarding the Products' true nature;

l.    Whether Defendant was unjustly enriched at the expense of Plaintiffs and the Class members;

m.    Whether Plaintiffs and the Class paid more money for the Products than they actually received; and,

n.    How much more money Plaintiffs and the Class paid for the Products than they actually received;

56.    Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

57.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class each purchased the Products under the false belief that the Products were free of preservatives. Plaintiffs and the Class relied upon Defendant's packaging and would not have purchased the Products if they had known that the Products contained preservatives and/or artificial flavors.

58.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

59.   The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

60.   Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

61.   Absent a class action, Defendant will likely retain the benefits of their wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE SECTION 1750, *et seq*.

62.   Plaintiffs repeat and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

63.   Plaintiffs bring this cause of action pursuant to Civil Code section 1750, *et seq*., the Consumers Legal Remedies Act ("CLRA"), each on their own behalf and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

each on behalf of all other persons similarly situated. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products.

64. The Class consists of thousands of persons, the joinder of whom is impracticable.

65. There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth herein.

66. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

67. The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising and packaging the Products with intent not to sell them as advertised.

68. Defendant fraudulently deceived Plaintiffs and the Class by misrepresenting the Products as having characteristics which they do not have, e.g., advertising and labeling the Products as having "No Preservatives" when they actually contain citric acid, a well-known preservative. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

69. Defendant fraudulently deceived Plaintiffs and the Class by labeling and advertising the Products with intent not to sell as advertised, e.g., advertising and

FIRST AMENDED COMPLAINT

labeling the Products have "No Preservatives" when they actually contain citric acid, a well-known preservative. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

70. Defendant knew or should have known, through the exercise of reasonable care, that labeling and advertising the Products as containing "No Preservatives" was misleading.

71. Defendant's actions as described herein was done with conscious disregard of Plaintiffs' rights, and Defendant was wanton and malicious in its concealment of the same.

72. Defendant's labeling and advertising of the Products was a material factor in Plaintiffs' and the Class's decisions to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiffs and the Class reasonably believed that they were purchasing Products that were free of preservatives. Had they known the truth of the matter, Plaintiffs and the Class would not have purchased the Products.

73. Plaintiffs respectfully request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2) of the Act. In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

      a. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

           i. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively label the Products as having "No Preservatives."

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

ii. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies.

iii. Further, injunctive relief, in the form of label/advertising modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, removing the "No Preservatives" claims on the label. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members will overpay for deceptively labeled Products), rendering injunctive relief a necessary remedy.

74.   Plaintiffs and the Class have suffered injury in fact and has lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs and the Class paid for Products that were different from what they were

reasonably expecting to receive when they decided to make their purchases. Plaintiffs and the Class would not have purchased the Products had they known that the Products contained preservatives.

75.    By letters dated August 25, 2020 and May 10, 2021, Plaintiffs advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

76.    Plaintiffs shall be irreparably harmed if such an order is not granted.

## COUNT TWO

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE SECTION 17500, *et seq.*

77.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporate the same as if set forth herein at length.

78.    Plaintiffs bring this cause of action pursuant to Business and Professions Code section 17500, *et seq.*, each on their own behalf and each on behalf of all other persons similarly situated. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products.

79.    California's False Advertising Law, California Business and Professions Code section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT

which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.    Defendant knowingly disseminated misleading claims regarding the absence of preservatives in the Products as a means to mislead the public about what is in the Products.

81.    Defendant controlled the labeling, packaging, production and advertising of the Products. It knew or should have known, through the exercise of reasonable care that its representation that there were no preservatives in the Products was untrue, deceptive, and misleading.

82.    Defendant's action of displaying misleading claims and omissions about the ingredients of the Products in prominent type face on each Products' front label is likely to deceive the general public.

83.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

84.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class purchased the Products in reliance upon the claims by Defendant that the Products contain "No Preservatives" as represented by Defendant's labeling and advertising. Plaintiffs would not have purchased the Products if they had known that the claims and advertising as described herein were false and misleading.

85.    As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitutes an unfair, unlawful, and fraudulent business practice within the meaning of California Business & Professions Code section 17500.

86.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiffs and members of the Class, pursuant to Business & Professions Code  Section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to

1    disclose the true natures of its misrepresentations.

2                    a.   Plaintiffs and the members of the Class seek are entitled to

3                         equitable relief as no adequate remedy at law exists.

4                         i.   The scope of permissible plaintiffs under the FAL is

5                              broader than the CLRA to include, for example,

6                              individuals or entities who purchased the Products for

7                              non-personal,   non-family,   and   non-household

8                              purposes. Thus, Plaintiffs and class members may be

9                              entitled to restitution under the FAL, while not

10                             entitled to damages under the CLRA.

11                       ii.   Injunctive relief is appropriate on behalf of Plaintiffs

12                             and members of the Class because Defendant

13                             continues to deceptively label the Products as having

14                             "No Preservatives."

15                      iii.   Injunctive relief is necessary to prevent Defendant

16                             from continuing to engage in this unfair, fraudulent,

17                             and/or unlawful conduct described herein and to

18                             prevent future harm—none of which can be achieved

19                             through available legal remedies. Further, injunctive

20                             relief, in the form of packaging or label

21                             modifications, is necessary to dispel public

22                             misperception about the Products that has resulted

23                             from years of Defendant's unlawful marketing

24                             efforts. Such modifications could include, but are not

25                             limited to, removing the "No Preservatives" claims

26                             on the label. Such relief is not available through a

27                             legal remedy, as monetary damages may be awarded

28                             to remedy past harm (i.e., purchasers who have been

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT

misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members will overpay for deceptively labeled Products), rendering injunctive relief a necessary remedy.

87. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs purchased the Product in reliance upon the claims by Defendant that the Products are preservative-free as represented by Defendant's labeling and advertising. Plaintiffs would not have purchased the Products if they had known that the claims and advertising as described herein were false and misleading.

## COUNT THREE
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
## BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.*

88. Plaintiffs repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

89. This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a Class consisting of "all persons residing in the United States and/or State of California who purchased the Products for personal use and not for resale during the time period of four (4) years prior to the filing of the complaint through the present."

### A. "Unfair" Prong

90. Under California's False Advertising Law, Cal. Bus. & Prof. Code

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

31

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

91.   Defendant's false and deceptive advertising as alleged herein does not confer any benefit to consumers.

92.   Defendant's false and deceptive advertising as alleged herein causes injuries to consumers, who do not receive a product consistent with their reasonable expectations.

93.   Defendant's false and deceptive advertising as alleged herein causes injuries to consumers, who end up overpaying for the Products that are not as advertised.

94.   Consumers cannot avoid any of the injuries caused by Defendant's false and deceptive advertising.

95.   The injuries cause by Defendant's false and deceptive advertising outweighs any benefits.

96.   Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

97.   Defendant could have furthered its legitimate business interests in ways other than by advertising the Products unfairly.

98.   Defendant's conduct threatens consumers by using deceptive and misleading "No Preservatives" claims. Defendant's conduct also threatens other companies, large and small, who play by the rules. Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

99.   All of the conduct alleged herein occurs and continues to occur in

Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

100. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair business practices.

101. Plaintiffs and the Class have suffered injury-in-fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs paid an unwarranted premium for these Products. Specifically, Plaintiffs paid for products advertised as "No Preservatives" when the Products contain the well-known preservative, citric acid. Plaintiffs and the Class would not have purchased the Products, or would have paid significantly less for the Products if they had known that Defendant's "No Preservatives" labeling and advertising were meaningless. Likewise, Plaintiffs and the members of the Class seek an order enjoining Defendant from making representations that the Products are contain "No Preservatives" for the reasons stated herein. Plaintiffs may want to purchase the Products again if they can be sure that Defendant is compliant with federal and state consumer protection laws. Additionally, Plaintiffs and the members of the Class seek and request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's misleading "No Preservatives" representations.

## B. "Fraudulent" Prong

102. California Business and Professions Code Section 17200, *et seq.*, prohibits fraudulent conduct, defined as conduct that is likely to deceive members of the public. A business practice is "fraudulent" if it actually deceives members of the consuming public.

103. Defendant's false and deceptive advertising as alleged herein is likely to deceive the members of the public.

104. Defendant's advertising of the Products, as alleged in the preceding

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

paragraphs, is false, deceptive, misleading, and unreasonable and constitutes a fraudulent business practice in violation of California Business and Professions Code Section 17200.

105. Defendant knew or should have known of its fraudulent conduct.

106. Defendant could have furthered its legitimate business interests in ways other than by advertising the Products fraudulently.

107. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

108. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its fraudulent business practices.

109. Specifically, Plaintiffs paid for products advertised as "No Preservatives" when the Products contain the well-known preservative, citric acid. Plaintiffs and the Class would not have purchased the Products, or would have paid significantly less for the Products if they had known that Defendant's "No Preservatives" labeling and advertising were meaningless. Likewise, Plaintiffs and the members of the Class seek an order enjoining Defendant from making representations that the Products are contain "No Preservatives" for the reasons stated herein. Plaintiffs may want to purchase the Products again if they can be sure that Defendant is compliant with federal and state consumer protection laws. Additionally, Plaintiffs and the members of the Class seek and request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's misleading "No Preservatives" representations.

## C. "Unlawful" Prong

110. California Business and Professions Code Section 17200, *et seq.*, identifies violations of any state or federal law as "unlawful practices that the unfair

FIRST AMENDED COMPLAINT

competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp*., 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

111. Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.,* California Business and Professions Code Section 17500, *et. seq.,* California's Sherman Law, and the California Business and Professions Code Section 12606.2, *et seq*.

112. Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

113. Defendant knew or should have known of its unlawful conduct.

114. As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

115. Defendant could have furthered its legitimate business interests in ways other than by advertising the Products unlawfully.

116. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

117. As a result of the business acts and practices described above, Plaintiff and members of the Class, pursuant to Business and Professions Code Section 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

   a. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

      i. The applicable limitations period is four years for

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

ii. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of labeling the Products as having "No Preservatives." Thus, Plaintiffs and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

iii. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively label the Products as having "No Preservatives." Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which

36

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, removing the "No Preservatives" claims on the label. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members will overpay for deceptively labeled Products), rendering injunctive relief a necessary remedy.

118. Specifically, Plaintiffs paid for products advertised as "No Preservatives" when the Products contain the well-known preservative, citric acid. Plaintiffs and the Class would not have purchased the Products, or would have paid significantly less for the Products if they had known that Defendant's "No Preservatives" labeling and advertising were meaningless. Likewise, Plaintiffs and the members of the Class seek an order enjoining Defendant from making representations that the Products are contain "No Preservatives" for the reasons stated herein. Plaintiffs may want to purchase the Products again if they can be sure that

FIRST AMENDED COMPLAINT

Defendant is compliant with federal and state consumer protection laws. Additionally, Plaintiffs and the members of the Class seek and request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's misleading "No Preservatives" representations.

## COUNT FOUR

## BREACH OF EXPRESS WARRANTY

119. Plaintiffs repeat and reallege all the allegations of the previous paragraphs and incorporate the same as if set forth herein at length.

120. Defendant expressly warranted on each and every Product that it contains "No Preservatives." Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods, the Products, that became part of the basis of the bargain and created an express warranty that the Products would conform to the stated promise. Plaintiffs placed importance on Defendant's claims.

121. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

122. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that conform to the advertisement.

123. Defendant's express warranty that the Products had "No Preservatives" was breached because the Products contained citric acid, a well-known preservative.

124. Defendant therefore breached the terms of its express warranty with Plaintiffs and the Class by not providing Products that conform to the advertising claim that the Products have "No Preservatives."

125. As a result of Defendant's breach of express warranty, Plaintiffs and the Class have been damaged in the amount to be determined at trial.

## COUNT FIVE

## UNJUST ENRICHMENT

126. Plaintiffs repeat and reallege the allegations set forth above, and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

incorporate the same as if set forth herein at length.

127. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiffs and members of the Class in a manner that was unfair, unconscionable, and oppressive.

128. Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

129. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

130. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

131. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

132. The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendant.

133. Plaintiffs and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all Counts as follows:

     A.    An order enjoining Defendant from continuing to label, package, and/or advertise the Products as challenged herein so as to dispel the consumer deception;

39

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

B.   Damages against Defendant in an amount to be determined at trial, together with pre-and post-judgement interest at the maximum rate allowable by law on any amounts awarded;

C.   Restitution and/or disgorgement in an amount to be determined at trial;

D.   Reasonable attorneys' fees and costs; and

E.   Granting such other and further as may be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.


Dated: June 3, 2021                    **CLARKSON LAW FIRM, P.C.**

                                        /s/ Ryan J. Clarkson
                                       Ryan J. Clarkson, Esq.
                                       Bahar Sodaify, Esq.
                                       Christina N. Mirzaie, Esq.

                                       *Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT